1 | PATRICIA BARBOSA (SBN 125865)
**BARBOSA GROUP**
2 | 606 Lake Street, #9
Huntington Beach, CA 92648
3 | Tel: (714) 465-9486
PBarbosa@barbosagrp.com
4 |
JEFF A. HARRISON (SBN 151227)
5 | MARY J. LIM (SBN 272170)
**METZ & HARRISON, LLP**
6 | 139 Richmond Street
El Segundo, CA 90245
7 | Tel: (310) 414-9400
Fax: (310) 414-9200
8 | JHarrison@metzharrison.com
MLim@metzharrison.com

*Attorneys for Plaintiff, DENNIS SHARP*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| DENNIS SHARP, | ) Case No.: 3:11-cv-01379-CAB-WMC |
|---|---|
| Plaintiff, | ) <u>**Civil Rights**</u> |
| vs. | ) **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER** |
| COVENANT CARE LLC; COVENANT CARE LA JOLLA, LLC dba LA JOLLA NURSING AND REHABILITATION CENTER; LA JOLLA – CAL ASSOCIATES L.P.; and DOES 1 through 10, Inclusive, | |
| Defendants. | |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER
Case No. 3:11-cv-01379-CAB –WM

I.      INTRODUCTION

In enacting the Americans with Disabilities Act (ADA), Congress knew that to make the goal of a discrimination-free society, the federal courts would need to become a vital part of the process of enforcing disability rights. Congress stated that the purpose of the ADA was to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Defendants' motion seeks the opposite result—to make sure that this Court cannot enforce the ADA standards—by misapplying the federal civil procedures to keep Plaintiff from making his claim in court. Congressional mandate, the purposes of the ADA, and the fairness prescribed by our federal procedures require that Plaintiff have a genuine and fair opportunity to prove his case against Defendants.

Defendants are clear in their motivation for continuing the motion cutoff deadline – to moot out Plaintiff's claims. Defendants then have the audacity to claim that such result would not in any way prejudice Plaintiff, but rather would be efficient and fair. To add insult to injury (literally in this case), Defendants then attack and disparage Plaintiff in their pleading.

The reality is that Defendants (or at least Defendants' counsel) have absolutely no interest in what is fair or efficient. If Defendants were truly interested in fairness and efficiency, they could have very easily entered into a consent decree for all the work they are currently doing when Plaintiff made his demand for injunctive relief demand on or about November 8, 2011 or even on or about May 9, 2012, when Defendants submitted their plans for the extensive work to OSHPD, since by then, Defendants certainly knew they were going to do the work. Defendants not only did not agree to enter into a consent decree at either of these times, or any time later, but Defendants continued spending money to vigorously litigate this action.

Maybe fairness and efficiency did not dawn on Defendants for all these many months, and they just now thought of it— or maybe the problem is not really that Plaintiff has fought discrimination and litigated to remove barriers on more than one occasion. Maybe the problem is the way Defendants' counsel conducts himself in these types of actions. The Court can certainly look at the substantial barrier removal Plaintiff has been responsible for, but maybe it should instead

---
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER
Case No. 3:11-cv-01379-CAB –WMC      1

look at how these cases are defended, especially by this particular counsel. Plaintiff's counsel has at least six other cases currently with Defendants' counsel wherein the *modus operandi* has been identical – fight as much as possible in the litigation, all the while having the Defendant(s) do all the work, but never agreeing to settle by formalizing the intent to do all the work.

The question then, is what does this accomplish? Certainly it is not efficient because efficiency would dictate that if the Defendant(s) are going to do all the work anyway, they should agree to do it early in the litigation to avoid all the attorneys' fees . . . wait, could this be the key? Is it possible that Defendants' counsel takes this strategy because it incurs the maximum attorneys' fees – for him and his firm – even though he still has his clients do the work because he knows they would ultimately be ordered to anyway?

What could plaintiff(s) possibly complain about, since all the injunctive relief is being done – other than once defendant(s) render the action moot by doing all the work, Defendants' counsel would then certainly seek to have the state claims dismissed for lack of jurisdiction, forcing plaintiff(s) to refile in state court, thus incurring more attorneys' fees.

Defendants in this action have had more than twenty years under the Americans with Disabilities Act and more than forty years under the Unruh Act and the Disabled Persons Act to remove the significant barriers that they finally chose to begin removing in May of this year. All they ask is for a little more time to moot out Plaintiff's claims and then, most certainly, have Plaintiff's state claims dismissed for lack of jurisdiction and force Plaintiff to start over by filing in State court. Efficient – no. Fair – not even close. The only one who benefits from this strategy is Defendants' counsel, and efficiency and fairness should dictate that Defendants' motion be denied in its entirety.

II. GOOD CAUSE DOES NOT EXIST TO CONTINUE THE MOTION CUT-OFF DEADLINE

A. Purpose of the Fed. R. Civ. P. 16(b) Scheduling Order

Under Fed. R. Civ. P. 16(b), a scheduling order requires setting time limits for interposing various motions that might otherwise be used as stalling techniques. A "scheduling order is not a

frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). With federal courts inundated today with a torrent of civil and criminal cases, Rule 16 is (more than ever) an important component of calendar management. *Id.* at 611. In *Johnson*, the Ninth Circuit stressed that "disregard of the [Rule 16] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Id.* at 610.

B. <u>Good Cause Must Exist to Modify the Scheduling Order—Diligence Factor</u>

The district court may, however, modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *See* Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment). A scheduling order may be modified only upon a showing of good cause. Rule 16(b)'s "good cause" standard is an exacting one, which primarily considers the diligence of the party seeking the amendment. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. If the moving party was not diligent, the inquiry should end. *Johnson*, *supra* at 609.

California district courts and the Ninth Circuit continue to apply *Johnson* in fine tuning the definition of "diligence" within the context of Rule 16(b)'s "good cause" standard. In *Eckert Cold Storage, Inc. v. Behl*, the court ruled that if the moving party was not diligent in seeking the amendment, leave to amend should be denied. *Eckert*, *supra*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996). Furthermore, the reasons for difficulty in meeting the scheduling order "cannot be traced to the movant's own carelessness." *United States v. Bell*, 1997 WL 361957 (E.D. Cal. Apr. 1, 1997).

Defendants were not diligent in seeking to amend the scheduling order. <u>Three days</u> before the filing deadline for dispositive motions and seven months after the issuance of the Scheduling Order, Defendants made their *first* request to the Court to extend this deadline to give Defendants more time to moot out Plaintiff's claims.[1] *Eckert* is instructive in its denial of the motion to modify

---

[1] The last day to file dispositive motions was August 24, 2012. Defendants' extension request was discussed for the first time with the Magistrate during a teleconference on August 21, 2012.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER
Case No. 3:11-cv-01379-CAB –WMC     3

the scheduling order because the moving party waited seven months after receiving necessary documents before filing the motion. *Eckert* at 1233. Here, Defendants waited over ten months after receiving Plaintiff's demand for injunctive relief before requesting an extension to carry out the extensive work laid out in Plaintiff's demand.[2] *See also Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002) (finding the moving party did not demonstrate diligence in complying with the dates set by the district court because he did not seek to modify the scheduling order until four months after the court issued it).

Though Defendants admit they were well aware of the inherently slow approval process of OSHPD and the City, Defendants waited until May 2012—nearly a year after Plaintiff filed this action—to submit its first set of architectural plans for barrier removal at the subject property. By then, Defendants knew they only had three months to begin and complete the permitting and construction work required to satisfy Plaintiff's claims for injunctive relief.[3] This was impossible, and Defendants knew from the outset that they would need more time to file a motion for summary judgment, yet they waited until three days before the filing deadline to make their request known. Hence, Defendants' motion should be denied because Defendants failed to diligently seek an amendment.

Alternatively, the Court may deny Defendants' motion to modify the scheduling order because Defendants' own carelessness is to blame for why Defendants could not timely file their motion. Defendants could not file a motion for summary judgment based on remediation efforts because remediation was not completed in time. Worse yet, Defendants had not even *begun* remediation work until *after* the last day to file dispositive motions. Even though Defendants' lead counsel, Gregory Hurley, told the Court that construction had already begun at the August 21, 2012 teleconference, the truth is that it had not—As stated in Defendants' opening brief,[4] construction began on September 4, 2012, the penultimate day before Defendants had to file the instant motion.

---

[2] Plaintiff's demand for injunctive relief was provided to Defendants on November 8, 2011.
[3] The barrier removal project encompasses all areas of the skilled nursing facility.
[4] *See* Docket No.50-1.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER
Case No. 3:11-cv-01379-CAB –WMC                                                                 4

Defendants chose to let these barriers remain until Plaintiff brought this lawsuit; and now, Defendants cannot point to their last minute scramble to get plans approved and concrete poured as evidence of due diligence. Waiting, more waiting, and Defendants' own carelessness do not constitute good cause to modify the scheduling order, and their motion should be denied.

C. Good Cause Must Exist to Modify the Scheduling Order—Efficiency Factor

Defendants' notably light legal and factual analyses of the "diligence" factor reflect Defendants' need to rely more heavily on an "efficiency" argument to account for Defendants' lack of diligence. This argument, however, still fails as explained *infra*. Defendants argue that despite lack of diligence, good cause may still exist to extend the dispositive motion deadline when doing so promotes the interests of judicial economy by potentially narrowing the issues for trial.[5]

Despite Defendants' assertion, however, that the good-cause standard is "routinely met" in this way, they fail to provide any controlling authority to support this claim—Defendants resort to district court cases in sister circuits and Hawaii, and unpublished orders from the Ninth Circuit.[6] Not only is Defendants' legal authority non-binding on this Court, they are easily distinguishable. *See, e.g., Eischeid v. Dover Const., Inc.*, 217 F.R.D. 448, 455 (N.D. Iowa 2003) (good cause existed for extending a dispositive motion deadline where the proffered motion presented *legal* issues that the court would inevitably have to decide either prior to or in the course of trial); *Walker v. Pete*, 76 F. App'x 186, 188 (9th Cir. 2003) (court agreed to modify the schedule following defendants' counsel's kidney surgery and a finding that dispositive motion did not catch plaintiff by surprise); *O'Connell v. Potter*, 274 F. App'x 518, 519 (9th Cir. 2008) (granting extension to file motion for summary judgment because the case was not ready to proceed to trial); *Pasatiempo v. England*, 125 F. App'x 794, 797 (9th Cir. 2005) (plaintiff's counsel withdrew as counsel after the original deadline for filing dispositive motions, and *every* deadline was extended in order to allow *pro se* plaintiff extra time to prepare for trial).

---

[5] *See* Docket No. 50-1, 1:21-23.
[6] *Id.* at 1:21-28; 2:1-15.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER
Case No. 3:11-cv-01379-CAB –WMC                                                                                      5

Further, Defendants cite to cases where ADA claims were rendered moot at summary judgment[7]; however, none of the defendants in those cases required an extension to file their motions for summary judgment as Defendants do here. Defendants were not able to timely file a motion for summary judgment on mootness because Plaintiff's claims were not moot when Defendants' motion was due; they are not moot today; and in all likelihood, they will still not be moot by Defendants' proposed cut-off date.

Contrary to the summary judgment motion filed in *Eischeid*, *supra*, where the motion presented *legal* issues that could be narrowed for trial, Defendants plan to bring a dispositive motion based on mootness—an issue that, in all likelihood, will be fraught with genuine disputes as to many material facts. There is no guarantee that this case will be resolved via Defendants' motion for summary judgment. To the contrary, this case is likely to proceed to trial because remediation work is not always done correctly. This is particularly true in this case due to the broad scope of the injunctive relief sought. If that happens, Defendants will get a "second bite of the apple" to get the injunctive relief done before trial. Then, if Defendants are finally able to remove all the barriers Plaintiff has standing for, Plaintiff's ADA claim will be mooted out, and his state law claims will be dismissed. At that point, Plaintiff will have no other recourse but to re-file against Defendants in state court, where no doubt, Defendants' dilatory, fee-raising tactics would start all over again. When this happens, Defendants will have succeeded in guiding this case down the most expensive, yet least efficient path possible.

The most efficient solution to this kind of judicial waste is to deny Defendants' motion to extend motion cut-off dates and order the parties to proceed to trial as scheduled.[8] Moving directly to trial will move this case off the Court's flooded docket and resolve Plaintiff's claims more quickly than would granting a three-month extension to file dispositive motions. Unlike the

---

[7] *Id.* at 2:16-24.
[8] Pretrial disclosures are due next month, and the Final Pretrial Conference is scheduled for November 9, 2012.

situation in *O'Connell, supra*, this case *is* ready for trial and there is no need to prolong this case by allowing defense counsel to bill for a motion for summary judgment on his way to trial.

        D.      <u>Good Cause Must Exist to Modify the Scheduling Order—Prejudice Factor</u>

In addition to considering the moving party's diligence and issues of judicial economy, courts will consider the existence or degree of prejudice to the party opposing the modification as an additional reason to deny a motion. Although prejudice to the opposing party supplies an additional reason to deny a motion, lack of prejudice does not supply good cause. *Johnson* at 609; *see also Gen. v. Ctr. for Disability Rights*, 2010 WL 3732198 (W.D.N.Y. Sept. 17, 2010) *citing Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) ("The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, <u>in particular, whether allowing the amendment at this stage of the litigation will prejudice [the other party]</u>." Emphasis added.); *Roberts v. Cate*, 2012 WL 1499136 (E.D. Cal. Apr. 27, 2012).

Here, for the above and foregoing reasons, Plaintiff will be severely prejudiced if the Court grants Defendants' request to extend the motion cut-off date at this critical stage of the litigation. Mr. Hurley is a "serial" ADA defense counsel, who bills a tremendous amount in fees by refusing to agree to all the work, needlessly litigating matters, while simultaneously doing all the work. This time, however, Mr. Hurley miscalculated how long it would take Defendants to do the work. This "churn and burn" method serves no purpose except to increase the cost of litigation to the overall detriment of his clients and hinders a busy court's ability to manage litigation and administer justice. It flies in the face of local rules and Chambers' rules, which order attorneys to attempt to resolve litigation consistent with clients' interests and attempt to informally resolve disputes with opposing counsel.

Judicial intervention is required. Defendants and their counsel cannot be allowed to game the judicial system in direct contravention of the Americans with Disabilities Act of 1990. This federal mandate seeks to eliminate discrimination against individuals with disabilities; whereas, Defendants seek to wrongfully perpetuate negative stereotypes[9] and continue to discriminate against

---

[9] *See* Docket No. 50-1, 4:22-23.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER
Case No. 3:11-cv-01379-CAB –WMC       7

individuals with disabilities by maintaining access barriers at their facilities for as long as possible. It is particularly reprehensible that Defendants have never taken steps prior to Plaintiff's lawsuit to evaluate and remove barriers at the La Jolla Nursing and Rehabilitation Center given that Defendants have stipulated to having the funds to remove barriers, and at deposition, Defendants admitted that 90% to 95% of their patients are wheelchair users.

Congress designed the ADA to be enforced through private litigation. Thus, after Plaintiff was forced to wear adult diapers at Defendants' facilities because his wheelchair could not fit into the patients' bathroom, Plaintiff brought this lawsuit to enforce his rights. Now, because of this lawsuit, Defendants are finally taking steps to make their facilities comply with federal and state accessibility codes for all individuals with mobility disabilities. In exchange, Defendants are asking the Court for more time to ensure that Plaintiff does not get monetary relief for the humiliation and discrimination he endured, nor for the fees and costs associated with the drawn out litigation caused by Defendants, for which Mr. Hurley has certainly already been paid.

This abuse of process needs to end. It needs to stop. The purpose of the ADA was to provide clear, strong, consistent, enforceable standards to address discrimination against individuals with disabilities; to ensure that the Federal Government plays a central role in enforcing the standards established in the ADA; and to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce in order to address the major areas of discrimination faced day—to—day by people with disabilities. 42 U.S.C. § 12101(b). Thus, unless the goal of the judiciary is to emaciate the ADA and make it impossible to enforce this Act, this Court needs to deny Defendants' motion to the scheduling order to extend the time to file a motion and thereby continuing the trial for an indeterminate time. To do otherwise, would be to reward Defendants for violating federal regulations and wasting judicial resources.

Good cause to modify the scheduling order does not exist because: 1) Defendants lacked diligence; 2) efficiency arguments fall in favor of proceeding directly to trial; and 3) Plaintiff would be supremely prejudiced by a modification of the scheduling order at this stage of the litigation.

### III. DEFENDANTS' ALTERNATIVE MOTION TO STAY SHOULD BE DENIED

In the alternative, Defendants request that the Court stay this case and set a status conference for November 30, 2012. Defendants cite to *Sanford v. Capital City Restaurants, Inc.*, 2006 WL 5003842 (E.D. Cal. 2006) as illustrative of how courts will stay litigation to permit a defendant to complete all remedial work. As established at the Parties' last teleconference with the Magistrate, *Sanford* is clearly distinguishable because there, before plaintiff's complaint was filed, defendants had previously settled a lawsuit involving ADA violations at the same restaurant, brought by another plaintiff. For good reason, the *Sanford* court stayed the proceedings to allow the defendants to demolish and rebuild the restaurant per the prior settlement agreement. Here, Defendants had no prior settlement agreement for barrier removal and were not in the process of removing barriers at the time Plaintiff filed this action.

In *Sanford*, the factors governing a motion to stay were: "(1) the possible damage that may result from the grant of a stay, (2) the hardship or inequity a party may suffer in being required to go forward with the case, and (3) the orderly course of justice-in terms of simplifying or complicating the issues, proof, and questions of law which could be expected to result from a stay." *Sanford v. Capital City Restaurants, Inc.*, CIV 05-0519 WBS JFM, 2006 WL 5003842 (E.D. Cal. Jan. 12, 2006) (citing *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir.1962) (citing *Landis,* 299 U.S. at 254-55).

As previously discussed, these factors weigh heavily in favor of denying Defendants' motion to stay. In short, why stay the case when the case is ready for trial? Plaintiff could suffer even greater damage from a stay, which delays trial for an indeterminate and even greater period of time, heightening the potential for all the aforementioned prejudice. Meanwhile, Defendants would not suffer hardship or be unfairly surprised if required to go forward with the case because up until Defendants' last minute request for an extension, the Parties were operating within the dates issued in the January 23, 2012 scheduling order and preparing for trial. Finally, any perceived benefits which could result from a stay are outweighed by the policy concerns outlined above, involving not only judicial efficiency, but also upholding the basic principles of justice and fairness.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER
Case No. 3:11-cv-01379-CAB –WMC                                                                                                  9

## IV. CONCLUSION

For the above reasons, Plaintiff respectfully requests that Defendants' motion to modify the scheduling order be denied in whole.  The current stay on the dispositive motion deadline, placed at the last teleconference pending this supplemental briefing, should be lifted.

Dated: September 14, 2012        **METZ & HARRISON, LLP**

                    By:   s/-Mary J. Lim
                          JEFF A. HARRISON
                          MARY J. LIM
                          Attorneys for Plaintiff, DENNIS SHARP
                          Email: MLim@metzharrison.com

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER
Case No. 3:11-cv-01379-CAB –WMC                                                                                              10

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the above-entitled action; my present address is: 139 Richmond Street, El Segundo, CA 90245.

On September 14, 2012, I electronically filed with the United States District Court - Southern District of California CM-ECF system the following document(s):

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER**

Thereby electronically serving the following:

Gregory Francis Hurley hurleyg@gtlaw.com, chilleenm@gtlaw.com, oclitdock@gtlaw.com, sautters@gtlaw.com, watersl@gtlaw.com

Michael Chilleen chilleenm@gtlaw.com, oclitdock@gtlaw.com, sautters@gtlaw.com, watersl@gtlaw.com, as reflected in the automatically generated Notice of Electronic Filing (NEF).

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 14, 2012, at El Segundo, California.

_____
ELENA MONROY
Email: EM@metzharrison.com